UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ARTHUR MILLER,

                    Plaintiff,

  v.

CHAPLAIN RON BAER et al.,

                    Defendants.

No. 08-5196RBL/JRC

REPORT AND RECOMMENDATION

**NOTED FOR:**
**August 21, 2009**

This 42 U.S.C. §1983 Civil Rights matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrate Judges' Rules MJR 1, MJR 3, and MJR 4.

This matter comes before the court upon defendant's motion for summary judgment (Dkt # 47). Having considered the entire file, including the response, the undersigned recommends the motion be GRANTED and this case be DISMISSED WITHOUT PREJUDICE.

REPORT AND RECOMMENDATION- 1

## FACTS AND PROCEDURAL HISTORY

Arthur T. Miller alleges he is a follower of a "PAGAN" religion (Dkt. # 4). Plaintiff alleges that while at two different prisons, his rights under the Religious Land Use Institutionalized Persons Act, (RLUIPA), were violated when he was not allowed to order certain deities to worship and when his sacred items were defiled.

Plaintiff alleges that in 2006, while he was housed at the Cedar Creek Correction Center, (CCCC), Chaplains Garringer and Houston denied him the ability to order certain religious deities. He also alleges a Correctional Officer Sibley "defiled" his sacred items. Plaintiff provides no further details as to how or why the items were defiled.

Plaintiff alleges that in August of 2007, while housed at the Airway Heights Corrections Center, AHCC, Chaplain Baer denied him the ability to order the deities he wished to worship because none of the approved vendors sold the items. In late August he alleges he was informed that he or his family could order the items from a non-approved vendor (Dkt. # 4).

Plaintiff alleges that in November of 2007, his family purchased the items and mailed them to the facility but that he heard nothing from the chaplains until after he filed a grievance on December 20, 2007 (Dkt. # 4). Plaintiff alleges that on December 31, 2007 he was informed the items were restricted by Chaplain Barfknecht at the direction of Chaplain Hernandez. Plaintiff alleges defendant Barfknecht "defiled" his sacred items, but he again provides no details (Dkt. # 4).

Plaintiff alleges that in January of 2008, he attempted to file a grievance against Chaplains Barfknecht and Hernandez, but Grievance Coordinator Archer refused to process the Grievance (Dkt. # 4). Plaintiff alleges he spoke with two other Chaplains, Garringer and Luce,but received no relief (Dkt. # 4). Plaintiff seeks monetary damages and injunctive relief.

REPORT AND RECOMMENDATION- 2

Defendants move for summary judgment and argue plaintiff did not file any grievance regarding the issue of Defendant Sibley allegedly defiling sacred items at CCCC (Dkt. #47). Defendants also argue plaintiff did not exhaust administrative remedies regarding the allegations that he was denied the right to order deities in 2006 by Defendant Garringer (Dkt # 47).

Defendants argue plaintiff did not complete the grievance process regarding his 2007 and 2008 allegations because he did not submit appeal "Form 21-142" before the filing of this action. Defendants argue that plaintiff fails to state a claim that Defendant Barfknecht defiled his items. They argue the examination of the items does not place any burden on the exercise of plaintiff's religion (Dkt. # 47). The final argument is that the defendants are entitled to qualified immunity.

The court notes that Defendant Houston was never served; this defendant left state employment years prior to this action being filed. The defendants were not able to provide a current address for this defendant. The court has declined to order service by publication as there is no evidence the defendant is avoiding service. See, (Dkt. # 39, 40, 41, 43, 44, 45, 46, 48, 49, 53, and 54).

Defendants flesh out the facts in the complaint in the motion for summary judgment. Plaintiff is a Wiccan and the deities at issue are cast resin replicas of human skulls (Dkt # 47, page 6 and Exhibit 5, Declaration of Amy Barfknecht, page 3, ¶ 6). Defendants state:

> Defendant Ronald Baer was the Chaplain at AHCC from January 2007 through December 30, 2007. Ex. 4, Declaration of Baer, ¶1. One of Chaplain Baer's jobs was to assist offenders with ordering religious property and to issue religious property to offenders when it came in. Ex. 4, ¶2. Offenders are normally required to order property from an approved vendors list. Ex. 4, ¶3; Ex. 1, Att. C, p. 3.
> On August 8, 2007, Chaplain Baer received an Inmate Kite from Plaintiff asking how he could get his deity statues if they weren't available from an authorized vendor. Ex. 4, ¶6, Att. A. Chaplain Baer responded on August 10, 2007, and told Plaintiff that AHCC policy required that he order his deities from an approved vendor list. Ex. 4, ¶6, Att. A. Plaintiff then filed a grievance regarding that issue. Ex. 4, ¶7; Ex. 2, ¶11, Att. A. After Plaintiff filed his

REPORT AND RECOMMENDATION- 3

grievance, Chaplain Baer was told that Plaintiff could order items that were on the Religious Property Matrix from a vendor that was not on the approved vendor list. Ex. 4, ¶7. Chaplain Baer told Plaintiff that he could order his deities from a non-authorized vendor, and Plaintiff then withdrew his grievance. Ex. 4, ¶7; Ex. 2, ¶12, Att. A.

When religious property arrives at AHCC for an offender, the property is forwarded unopened to the Chaplain's office. Ex. 4, ¶8. The chaplain then would normally call the offender to the Chaplain's office, and the package would be opened with the offender present. Ex. 4, ¶8; Exhibit 5, Declaration of Barfknecht, ¶4. The chaplain would examine the religious item ton[sic] ensure that it met the requirements of the Religious Property Matrix. Ex. 4, ¶8; Ex. 5, ¶4. If it did, the property would be issued to the offender, but if it did not, the offender would be given the choice of returning the property to the vendor, disposing of it, or appealing the decision to a higher level. Ex. 4, ¶8; Ex. 5, ¶8; Ex. 1, Att. C, pp. 8-9.

Plaintiff's family ordered the skulls on or around November 24, 2007. See Complaint, ¶4. Chaplain Baer left his position at AHCC on December 30, 2007, and he never saw or examined the deities that Plaintiff's family had ordered. Ex. 4, ¶9.

Defendant Barfknecht began working as an Administrative Assistant in the Religious Activities Center (RAC) at AHCC on December 3, 2007. Ex. 5, ¶1. One of Defendant Barfknecht's duties is to issue religious property to offenders. Ex. 5, ¶5. On December 16, 2007, Plaintiff wrote an Inmate's Kite to "Chapel" asking about the status of a package his family had sent. Ex. 5, ¶3, Att. A. On December 27, 2007, Defendant Barfknecht responded to Plaintiff's Inmate's Kite and informed him that his package was there and that he would be on call out for Monday, December 31. Ex. 5, ¶3, Att. A.

On December 31, 2007, Plaintiff came to the RAC to get his package. Ex. 5, ¶6. Defendant Barfknecht and Defendant Hernandez were both present. Ex. 5, ¶5. Chaplain Jose Hernandez is a contract chaplain with AHCC. Ex. 5, ¶5. Contract chaplains are hired to meet the needs of a specific religious group. Ex. 5, ¶5. Chaplain Hernandez fulfills the needs of the Catholic population and he covers for Chaplain Luce on Chaplain Luce's days off. Ex. 5, ¶5. Chaplain Hernandez is authorized to issue religious property, but one of Defendant Barfknecht's main job functions is to handle the property in order to give Chaplain Hernandez and Chaplain Luce more time for their jobs. Ex. 5, ¶5. Chaplain Hernandez was present on December 31, 2007, when Plaintiff arrived at the RAC, but Chaplain Hernandez gave Defendant Barfknecht no directions about approving or disapproving Plaintiff's religious items. Ex. 5, ¶5.

After Plaintiff arrived at the RAC on December 31, 2007, Defendant Barfknecht opened the package in his presence to examine the items to determine whether they were allowed under the Religious Property Matrix for Plaintiff's declared religious preference, Wicca. Ex. 5, ¶6. Skulls were not listed on the Religious Property Matrix for Wicca, which lists as acceptable deities, "God/Goddess; one of each 6" maximum height; light metal, plastic, terra cotta, wood." Ex. 5, ¶6; Ex. 1, Att. E, p. 47. In addition to Defendant Barfknecht's concern about whether the skulls were considered deities, Defendant Barfknecht

REPORT AND RECOMMENDATION- 4

was also concerned about the skulls for safety and security reasons. Ex. 5, ¶6. The skulls were made of a heavy, firm, solid material that did not appear to be light metal, plastic, terra cotta, or wood, as required by the matrix. Ex. 5, ¶6. Defendant Barfknecht told Plaintiff that she could not issue the skulls to him and that, per policy, he had the option of sending them out, destroying them, donating them to charity, or appeal her decision. Ex. 5, ¶8. Plaintiff stated that he wanted to appeal the decision that the skulls were not allowed, so Defendant Barfknecht returned the skulls to the box and informed Plaintiff that he would be given the paperwork to complete the appeal. Ex. 5, ¶8. Defendant Hernandez agreed with Defendant Barfknecht's decision because the skulls did not appear to meet the requirements listed on the Religious Property Matrix for Wicca. Ex. 5, ¶7. New property must always be inspected before it is issued to offenders to ensure that it meets requirements and to make sure there is no contraband or security issue associated with the property. Ex. 5, ¶9. This is particularly true when the items are arriving from a vendor that has not been pre-authorized to send property to offenders. Ex. 5, ¶9. Plaintiff's skulls were not sent from a pre-authorized vendor. Ex. 5, ¶9. Defendant Barfknecht did not "defile" the skulls. Ex. 5, ¶10. Defendant Barfknecht took the skulls out of the box in Plaintiff's presence, inspected them, and then returned them to the box. Ex. 5, ¶10. Defendant Barfknecht did nothing to the skulls except remove them from the box and return them to the box. Ex. 5, ¶10.

   Defendant Chaplain Greg Garringer is the Religious Program Manager for DOC. Ex. 3, ¶1. During the first week of January, 2007, Chaplain Garringer spent three days at AHCC in order to provide some orientation to Chaplain Luce, who started as Chaplain there on January 2, 2008. Ex. 3, ¶9; Ex. 6, Declaration of Luce, ¶¶1-2. While Chaplain Garringer was at AHCC, Plaintiff came to the Chaplains' office to complain about not being allowed to possess his skulls. Ex. 3, ¶9. Chaplain Garringer told Plaintiff that he might be able to get the skulls approved as religious deities by completing a Form 21-142, a Religious Ceremony or Traditional Rite Information Sheet. Ex. 3, ¶10. Chaplain Garringer gave Plaintiff a Form 21-142 while he was there that week. Ex. 3, ¶10; Ex. 6, ¶3. After he left AHCC, Chaplain Garringer checked periodically with the RAC at AHCC to find out whether Plaintiff had turned in the form. Ex. 3, ¶11. Plaintiff had not. Ex. 3, ¶11; Ex. 5, ¶12.

   On January 16, 2008, Plaintiff wrote an Inmate's Kite to Defendant Chaplain Luce asking about the status of his appeal process regarding the religious property that had been denied on December 31, 2007. Ex. 6, ¶4, Att. A. Chaplain Luce responded that same day and told Plaintiff that he was to complete the paperwork that Chaplain Garringer had given him. Ex. 6, ¶4, Att. A. From January 22, 2008, through March 8, 2008, Chaplain Luce was away from AHCC for training. Ex. 6, ¶5. Upon his return, Chaplain Luce saw that he had received an Inmate's Kite from Plaintiff dated March 4, 2008, in which Plaintiff stated that he had been told by the grievance coordinator that the Form 21-142 was his appeal. Ex. 6, ¶5, Att. B. Plaintiff stated, "I do not understand why I have to fill out a form for items that are on the current religious property matrix." Ex. 6, ¶5, Att. B.

REPORT AND RECOMMENDATION- 5

Chaplain Luce responded on March 27, 2008, and again told Plaintiff to complete the form given to him by Chaplain Garringer. Ex. 6, ¶5, Att. B.

On March 31, 2008, this lawsuit was filed. See Docket. On May 1, 2008, Plaintiff was transferred from AHCC to the Twin Rivers Unit at the Monroe Correctional Complex. Ex. 1, Att. A; Ex. 5, ¶12. Between January 2008 and May 1, 2008, when Plaintiff was transferred from AHCC, no Religious Ceremony or Traditional Rite Information Sheet was submitted from Plaintiff for his skulls. Ex. 5, ¶12.

On or around June 4, 2008, more than two months after Plaintiff filed this lawsuit, Chaplain Garringer received a Religious Ceremony or Traditional Rite Information Sheet for Plaintiff's skulls. Ex. 3, ¶12, Att. A. The form was completed and signed by Reverend Barbara Kilner-Lauderdale, a member of DOC's Religious Advisory Committee and advisor with regard to the Wicca religion. Ex. 3, ¶12, Att. A. The form explained that the skulls represented the male and female divine and were customary and traditional to ancient Celtic Pagan practice of devotion to deity through ancestor worship. Ex. 3, ¶12, Att. A.

On June 4, 2008, after receiving the form, Chaplain Garringer wrote an e-mail to the chaplain at the Twin Rivers Unit and to AHCC to let them know that the skulls had been approved and that they could make the arrangements to have them shipped to Plaintiff. Ex. 3, ¶13, Att. B; Ex. 5, ¶13. After Plaintiff paid for the cost of shipping, the skulls were shipped to him at his new facility. Ex. 5, ¶13.

(Dkt. # 47, pages 6 to 10).

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant

REPORT AND RECOMMENDATION- 6

probative evidence, not simply "some metaphysical doubt.") See also Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradict facts specifically attested by the moving party. Id. Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

A.   *Exhaustion of Administrative Remedies.*

The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to filing a complaint in federal court. The relevant portion of the act states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA applies to plaintiff. The United States Supreme Court determined that Congress enacted the provision in order to reduce the quantity and improve the quality of prisoner suits. Porter v. Nussle, 534 U.S. 516 (2002). By mandating exhaustion, Congress enabled corrections officials to address prisoner complaints internally. Where exhaustion was

REPORT AND RECOMMENDATION- 7

once discretionary, it is now mandatory. "All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter v. Nussle, 534 U.S. 516 (2002) (*quoting* Booth v. Churner, 532 U.S. 731, 739 (2001)). The Porter Court ruled that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Porter, 534 U.S. at 520.

Plaintiff did not file any grievance regarding his claims that defendant Sibley defiled his sacred items at CCCC in 2006 (Dkt. # 47, Exhibit 2, Declaration of Devon Schrum page 3 ¶ 9). Plaintiff did not file any grievance regarding his claim that defendant Garringer denied him the ability to order religious deities while the plaintiff was housed at CCCC in 2006 (Dkt. # 47, Exhibit 2, page 3 ¶ 10).

Plaintiff did file a grievance stating that defendant Baer denied him the ability to order religious deities while plaintiff was housed at AHCC in August of 2007 (Dkt. # 47, Exhibit 2, Declaration of Devon Schrum, page 3 ¶ 11). The grievance was withdrawn August 19, 2007, after plaintiff was informed he could order the deities from a non-approved vendor.

In December of 2007, Plaintiff was told by defendant Barfknecht that the skulls would not be issued to him. Plaintiff wanted to appeal that decision and in January of 2008 he was given form 21-142 to fill out as his appeal. Plaintiff did not fill out the form prior to filing this legal action. The filled out and approved form was forwarded to defendant Garringer in June of 2008 (Dkt. # 47, Exhibit 3 Declaration of Gregg Garringer, page 3 ¶ 10 to 13). Plaintiff was then allowed to ship the skulls to the Monroe Complex where he is now housed.

After plaintiff commenced this action he submitted the form for his appeal, Form 21-142. Plaintiff was then was allowed to possess the religious items at issue. An inmate may not file a lawsuit until he exhausts the administrative remedies available. Rumbles v. Hill, 182 F.3d 1064, 1066

REPORT AND RECOMMENDATION- 8

(9th Cir. 1999), cert. denied, 528 U.S. 1074 (2000); McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). Thus, issues regarding attempting to obtain the statutes at AHCC are unexhausted. Defendants Baer, Barfknecht Luce, and Garringer, are entitled to DISMISSAL WITHOUT PREJUDICE.

B.  *Defendant Houston*.

In response to the motion for summary judgment, plaintiff submits a 2006 grievance showing he administratively exhausted his claim that defendant Houston denied him the ability to order a statute for a deity (Dkt. # 49, Attachment 1, Exhibit A). Defendant Houston was never served and is not a proper party to this action. Plaintiff had 120 days to perfect service on this defendant and has failed to do so. See, Fed. R. Civ. P. 4 (m).

Federal Rule of Civil Procedure 4(m) indicates that if service of a summons and complaint is not made within 120 days of filing the court – on motion or on its own after notice to the plaintiff -- shall dismiss the claim without prejudice unless the plaintiff can show good cause why service was not made within that time. Ignorance of the rules is not good cause. Townsel v. County of Contra Costa, 820 F.2d 319, 320 (9th Cir.1987). A plain reading of the rule would dictate that dismissal of defendant Houston without prejudice is in order.

The court has no indication defendant Houston is aware of this action. Plaintiff has shown no good cause why he is not completed service on Defendant Houston. This Report and Recommendation constitutes notice to Plaintiff that unless within ten days of the service of this Report and Recommendation, plaintiff shows good cause for the failure to serve Defendant Houston, then the District Court should dismiss Defendant Houston without prejudice.

C.  *RILUPA*.

RLUIPA provides in relevant part:

REPORT AND RECOMMENDATION- 9

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. The term "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

Defendants argue that the handling and examination of his religious deities did not place a substantial burden on plaintiff's religion and was necessary for security reasons. The court agrees. Plaintiff is asking the court to mandate that a five-pound block of resin can be sent into a prison by an inmate's family members from a non-approved source without prison officials handling and examining the item. The court declines to accept plaintiff's position.

Under RLUIPA, plaintiff "bears the initial burden of going forward with evidence to demonstrate a prima facie claim" that the challenged action constitutes "a substantial burden on the exercise of his religious beliefs." Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005)(citing Cutter v. Wilkinson, 544 U.S. 709, 716-17 (2005)). To be considered a "substantial burden," the challenged state action "must impose a significantly great restriction or onus upon such exercise." Warsoldier at 995.

Plaintiff was allowed to order religious items from a non-approved vendor. The items violated both the height and weight requirements for religious items (Dkt. # 47, Exhibit 5, page 3 ¶ 6). Despite the items not fitting into the matrix, plaintiff was allowed to have the items once he completed a form and a religious advisor explained the significance of the items. Of course, the items were examined and searched prior to them being given to him. Plaintiff has failed to show a significant restriction or onus on the practice of his religion.

REPORT AND RECOMMENDATION- 10

Defendants are entitled to summary judgment as plaintiff has failed to show a violation of his rights under 42 U.S.C. 2000cc, RLUIPA.

D. *Qualified immunity.*

Prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The court must first consider if the law was clearly established. The second prong the court must consider is if a reasonable person would have known their actions violated clearly established law. Somers v. Thurman, 109 F.3d 614, 617 (9th Cir. 1997), cert. denied, 522 U.S. 852 (1997).

RULIPA is certainly clearly established law. However, the deity plaintiff was attempting to order was not on the approved matrix for religious property. The Washington State Prison system appears to have a complex appeal process that allows a person to order even non-approved items if a religious advisor explains the items significance to the satisfaction of prison officials. The process worked in this case, although there was a substantial delay. Prison officials could have believed their actions constitutional and they are entitled to qualified immunity from damages.

E. *The First Amendment.*

In his affidavit attached to the response to the motion for summary judgment plaintiff alleges his First Amendment rights as well as rights guaranteed under RULIPA were violated by the actions of the defendants in this action (Dkt # 49, attachment 1). Defendants object and in the reply note that there was not First Amendment claim in the Complaint. The court notes the complaint does not mention any First Amendment claim (Dkt. # 4). While a court liberally construes pro se pleadings, the court cannot supply facts that were not plead. Pena v. Gardner,

REPORT AND RECOMMENDATION- 11

976 F.2d 469 (9th Cir. 1992). There is not a First Amendment claim in this action. Further, the test for a First Amendment violation is more differential to prison officials than the standard under RULIPA. If this action fails under RULIPA, it would also fail to state a First Amendment claim.

## CONCLUSION

This court recommends that defendant's motion for summary judgment be GRANTED and this action DISMISSED WITHOUT PREJUDICE. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also,* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **August 21, 2009,** as noted in the caption.

DATED this 27th day of July, 2009.

/s/ J. Richard Creatura

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION- 12